**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| GUADALUPE RIVER COALITION,<br><br>*Plaintiff,*<br><br>v.<br><br>GUADALUPE-BLANCO RIVER AUTHORITY,<br><br>*Defendant.* | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | CIVIL ACTION NO. 5:25-CV-90 |

**PLAINTIFF'S ORIGINAL COMPLAINT**

## I. Introduction

1. Guadalupe River Coalition (the "Coalition" or "Plaintiff") brings this citizen suit against Guadalupe-Blanco River Authority ("GBRA" or "Defendant"), under the Federal Water Pollution Control Act, 33 U.S.C. § 1251, *et seq*., also known as the Clean Water Act ("CWA" or "Act"). The Coalition asks this Court to enter declaratory and injunctive relief, civil penalties, and other relief to correct GBRA's construction of an impoundment replacement project amounting to unauthorized placement of fill into waters of the United States without the requisite permit under Section 404 of the CWA. *See* 33 U.S.C. § 1365(a)(1).

2. Since August 2023, GBRA has been continuously violating Section 404 of the Clean Water Act with spillgates constructed at the site of the Dunlap Dam that impound waters of the United States in a manner that was not authorized by an individual Section 404 permit, and also in direct violation of the terms and conditions of Nationwide Permit ("NWP") 39. The spillgate construction project does not meet the terms and conditions of NWP 39because it causes the loss of greater than 1/2-acre of non-tidal waters of the U.S. and the loss of greater than 300 linear feet of perennial stream bed, by virtue of the fact that the new spillgates have resulted in significantly decreased

flows. These decreased flows downstream of the Dunlap Dam have caused areas of once non-tidal perennial streambed to become dry.

## II. Jurisdiction & Venue

3. This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1331 (federal question) and 33 U.S.C. § 1365(a) (CWA citizen suit to enforce effluent standards or limitations). The relief requested is authorized by 28 U.S.C. §§ 2201 and 2202 (further necessary or proper relief based on a declaratory judgment), 33 U.S.C. §§ 1319(b), 1365(a) (injunctive relief), and 33 U.S.C. §§ 1319(d), 1365(a) (civil penalties).

4. Venue is proper under 28 U.S.C. § 1391(b)(1), (2) and 33 U.S.C. § 1365(c), because the Defendant's unlawful construction project and unauthorized discharges are all located in and have occurred in Guadalupe County, Texas, which is within the San Antonio Division of the Western District of Texas.

## III. Notice

5. The Coalition has complied with the CWA's statutory notice requirements. *See* 33 U.S.C. § 1365(b)(1)(A). On September 25, 2024, in a letter sent by certified mail to Darrell Nichols, General Manager and CEO of GBRA, the Coalition gave GBRA notice of the violations identified in this Complaint and of its intent to file suit after sixty days should those violations continue. A true and correct copy of the notice letter, with documentation of its postmark and receipt, is attached as **Exhibit 1**.

6. The Coalition also mailed a copy of the notice letter by certified mail to the Administrator of the EPA, the Regional Administrator for EPA Region 6, the U.S. Department of Justice, the State of Texas through the Texas Attorney General, the Executive Director of the Texas Commission on Environmental Quality ("TCEQ"), the Fort Worth District of the U.S. Army Corps of Engineers ("USACE"), and the U.S. Army Corps of Engineers Headquarters.

7. More than sixty days have passed since the Coalition served GBRA and federal and state agencies with notice of its intent to sue for the violations described in this Complaint.

8. Neither the EPA nor the State has commenced or is diligently prosecuting an action to redress the violations described in the Coalition's notice letter and alleged in this Complaint.

9. The violations identified in the notice letter are continuing at this time and are reasonably likely to continue in the future.

## IV. Parties

### *Plaintiff Guadalupe River Coalition*

10. Plaintiff Guadalupe River Coalition is a Texas non-profit organization dedicated to the preservation and restoration of the Guadalupe River, particularly within Guadalupe County.

11. Guadalupe River Coalition is a "citizen" within the meaning of 33 U.S.C. § 1365(g), because it is an organization with an interest that is adversely affected, and its members have interests that are adversely affected by GBRA's CWA violations.

12. Guadalupe River Coalition is a membership organization, and its members include Texas residents who own waterfront property or who otherwise regularly use the Guadalupe River downstream of the Lake Dunlap Dam—an area which is impacted by the activities that are the subject of this Complaint.

13. Timothy White is a member of the Coalition and a managing member of LSP Bluffs, LLC, which owns approximately 10 acres of riverfront property on the Guadalupe River, only about 400 feet downstream of the Dunlap Dam. Mr. White operates an RV park on the Guadalupe River property. Since the unlawful construction, Mr. White's business has suffered, and the new spillgate construction has impaired Mr. White's ability to personally use and enjoy the river from this property, because the stream bed is smaller and narrower.

14. Phillip Schulze is another member of the Coalition. Mr. Schulze's family owns approximately 50 acres of riverfront property on the Guadalupe River, almost immediately downstream from Mr. White. His river frontage is approximately 1,800 feet downstream of the Dunlap Dam. Mr. Schulze and his family live on the property, from which they canoe, fish, swim, wade, and recreate in the waters of the Guadalupe River. Since the unlawful spillgate project, he can no longer use a canoe in this location, fishing holes have dried up, the water level is so low that it stagnates, and his ability swim or wade has been significantly diminished because the stream bed is smaller and narrower.

15. The relief sought by this Complaint will redress the harms to the Coalition caused by Defendant's unlawful construction project. Guadalupe River Coalition's injuries are unlikely to be redressed except by an order from this Court requiring Defendant to take immediate and substantial action to stop the unlawful fill and impoundment, and to comply with other relief that this Court deems necessary.

16. If successful, this action also will result in civil penalties that will deter future violations that would threaten the Coalition's members' use and enjoyment of the waterways where Defendant's violations have occurred.

17. Guadalupe River Coalition suffers actual, concrete injuries that are fairly traceable to Defendant's violations and are redressable by this Court. Guadalupe River Coalition has no other adequate remedy at law.

***Defendant Guadalupe-Blanco River Authority***

18. Defendant GBRA is the owner and operator of the Lake Dunlap Dam, located at 727 Lakeside Pass, New Braunfels, Texas 78130 in Guadalupe County.

19. GBRA is a water conservation and reclamation district and a public corporation, and is, therefore, a "person" under CWA Section 502(5), 33 U.S.C. § 1362(5) and subject to citizen suit enforcement under the CWA. *See* 33 U.S.C. § 1365(a)(1).

20. GBRA's General Manager and CEO is Darrell Nichols, whose mailing address is 2225 E. Common Street, New Braunfels, Texas 78130.

## V. <u>Legal Background</u>

### *The Clean Water Act*

21. Congress enacted the CWA to "restore and maintain the chemical, physical, and biological integrity of the Nation's waters." 33 U.S.C. § 1251(a). To achieve this goal, the Act prohibits "the discharge of any pollutant," including dredged or fill material, into navigable waters, except as authorized by a CWA permit. 33 U.S.C. §§ 1311(a), 1344, and 1362(6).

22. Section 404 of the CWA requires a permit from the U.S. Army Corps of Engineers to discharge dredged or fill material into "navigable waters," which includes all waters of the United States. 33 U.S.C. §§ 1344, 1362(7).

23. Waters of the United States include waters which are "[c]urrently used, or were used in the past, or may be susceptible to use in interstate or foreign commerce," 33 C.F.R. § 328.3(a).

24. "Fill material" includes any material placed in waters of the United States where the material has the effect of replacing any portion of a water of the United States with dry land or changing the bottom elevation of any portion of a water of the United States. *Id*. at § 323.2(e)(1). Without limitation, "fill material" includes rock, sand, soil, clay, and materials used to create any structure or infrastructure in the waters of the United States, and the term "discharge of fill material" generally includes "dams and dikes." *Id*. at §§ 323.2(e)(2), (f).

25. Each "discharge of any pollutant" that is not authorized by a permit violates the CWA. 33 U.S.C. §§ 1311(a), 1365(f).

26. Under Section 404(e) of the CWA, the U.S. Army Corps of Engineers can issue "general permits" to authorize certain categories of activities that are similar in nature and will cause only minimal adverse environmental effects when performed separately, and will have only minimal cumulative adverse effects on the environment. 33 U.S.C. § 1344(e).

27. One such permit is NWP 39, which authorizes discharges of dredge or fill material for the "expansion of commercial and institutional building foundations and building pads and attendant features that are necessary for the use and maintenance of the structures."

28. The TCEQ is responsible for conducting 401 certification reviews of the U.S. Army Corps of Engineers 404 permits, including general permits such as NWP 39.

***Citizen Enforcement***

29. The CWA authorizes any citizen to file a civil action against any person who commits an unlawful act under 33 U.S.C. § 1311, including the discharge of a pollutant without authorization pursuant to 33 U.S.C. § 1344, or any person who is in violation of a certification under 33 U.S.C. § 1341. 33 U.S.C. § 1365(a).

30. The CWA subjects citizen suits to two limitations. 33 U.S.C. § 1365(b). First, sixty days before filing a citizen suit, the citizen must give notice of the violation to the alleged violator, the EPA, and the State in which the violation occurs. 33 U.S.C. § 1365(b)(1)(A). Sixty days after giving notice, citizens may bring an action in federal district court to enforce any ongoing violations of the CWA. The purpose of providing notice to the alleged violator is "to give it an opportunity to bring itself into complete compliance with the Act and thus . . . render unnecessary a citizen suit." *Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Found., Inc.*, 484 U.S. 49, 60 (1987).

31. Second, the Act bars a citizen suit if the EPA or State "has commenced and is diligently prosecuting a civil or criminal action in a court of the United States, or a State to require compliance with the standard, limitation, or order." 33 U.S.C. § 1365(b)(1)(B).

32. Where, as here, the EPA or State fails to act within the sixty-day notice period, a citizen suit is appropriate. *See Envtl. Conservation Org. v. City of Dallas*, 529 F.3d 519, 526 (5th Cir. 2008) ("The citizen-suit provision is a critical component of the CWA's enforcement scheme, as it 'permit[s] citizens to abate pollution when the government cannot or will not command compliance.'") (alteration in original).

33. CWA Section 505, 33 U.S.C. § 1365, also authorizes citizens to seek injunctive relief, civil penalties, and litigation costs.

34. For violations occurring after November 2, 2015, where penalties are assessed on or after January 8, 2025, each separate violation of the CWA subjects the violator to a penalty of up to $68,445 per day per violation, pursuant to Sections 309(d) and 505(a) of the CWA. 33 U.S.C. §§ 1319(d), 1365(a), and 40 C.F.R. § 19.4 (Adjustment of Civil Monetary Penalties for Inflation). Section 505(d) of the CWA, 33 U.S.C. § 1365(d), allows prevailing or substantially prevailing parties to recover litigation costs, including attorney fees and expert witness fees.

## VI. Facts

35. The Coalition fully incorporates **Exhibit 1**¸ including all attachments to **Exhibit 1**, into this Complaint.

36. Guadalupe-Blanco River Authority owns and operates the Lake Dunlap Dam, located at 727 Lakeside Pass, New Braunfels, Texas 78130 in Guadalupe County.

37. The Dunlap Dam system includes the dam and spillway, an approximate 1.5-mile-long diversion canal, and the powerhouse located on the north bank of the Guadalupe River. The Dunlap Dam is the first of five "run-of-the-river" hydropower dams on the Lower Guadalupe River that

receive water from the Canyon Lake Reservoir, located approximately 17 miles upstream of Lake Dunlap.

38. The Dunlap Dam was constructed between 1927 and 1928, and its original design included "bear trap" roof-weir spillgates. It was not acquired by GBRA, its current owner and operator, until 1963.

39. Though GBRA has performed minor improvements, the Dunlap Dam remained operational as originally designed until the central spillgate failed on May 21, 2019.

40. Following the formation of a new Water Control and Improvement District, the failed dam was repaired—the three spillgates were replaced with new hydraulically-operated spillgates of a different design.

41. Construction was completed on or about August 31, 2023, returning Lake Dunlap to levels that existed prior to the dam failure.

42. However, the Guadalupe River downstream of the dam was not returned to prior conditions. The original spillgates were of a design that let water flow through the gates themselves, while the new spillgates are designed to significantly reduce the amount of water that may pass through the gates. This has resulted in significant loss of river habitat and stream bed for approximately 1.5 miles downstream of the Dunlap Dam.

43. In order to replace the spillgates, GBRA claimed coverage under U.S. Army Corps of Engineers Nationwide Permit 39. NWP 39 authorizes discharges of dredge or fill material for the "expansion of commercial and institutional building foundations and building pads and attendant features that are necessary for the use and maintenance of the structures."

44. In its NWP Pre-Construction Notice ("PCN"), GBRA indicated that the project will maintain the pre-construction course, condition, capacity, and location of open waters and will not restrict or impede the passage of normal or high flows.

45. GBRA's PCN indicates it was on notice that, if the project would not maintain the pre-construction condition of the water or restrict passage of normal or high flows, the project would require an individual permit.

46. NWP 39 may not be used if the discharge would cause the loss of greater than 1/2-acre of non-tidal waters of the U.S., or the loss of more than 300 linear feet of stream bed. The NWP 39 PCN requires that the project maintain the pre-construction course, condition, capacity, and location of open waters and not restrict or impede the passage of normal or high flows.

47. The new construction project has significantly reduced flows of surface water, which has resulted in a much narrower stream bed that no longer encompasses the stream bed of the River's original course.

48. The reduced flow and altered stream bed channel have meant that downstream fishing holes and swimming holes that once existed are no longer present, and the pools that do remain have become isolated and stagnant, leading to reduced aquatic life and an increase in algae growth, as well as increased terrestrial vegetation where there was once aquatic vegetation.

49. The Dunlap Dam spillgate project does not meet the requirements of NWP 39 and, therefore, was constructed unlawfully.

50. As of the time of filing Plaintiff's Original Complaint, GBRA's Dunlap Dam spillgate construction remains in place, meaning the unauthorized placement of fill material into waters of the United States is an ongoing violation of the Clean Water Act.

## VII. <u>First Claim for Relief</u>

51. The Coalition incorporates each and every allegation set forth above.

52. CWA Sections 301 and 404 (33 U.S.C. §§ 1311 & 1344) require that a person obtain a permit prior to the placement of fill within a water of the United States.

53. Defendants' placement of fill within Guadalupe River on or about August 31, 2023 without the requisite permit, and the action of leaving that fill in place, constitutes an ongoing violation of CWA Sections 301 and 404 (33 U.S.C. §§ 1311 & 1344). This violation has been repeated each day since on or about August 31, 2023.

54. Each violation is a separate and distinct violation of Section 301(a), 33 U.S.C. § 1311(a), and Section 402, 33 U.S.C. § 1342, of the CWA.

55. Neither the EPA nor the State of Texas is diligently prosecuting these violations.

56. GBRA's violations constitute ongoing violations of the CWA.

57. GBRA's continuing commission of the acts and omissions alleged in this Complaint irreparably harms the Guadalupe River in the area downstream of the Dunlap Dam, which is waters of the United States.

## VIII. <u>Prayer for Relief</u>

58. The Coalition respectfully asks this Court to:

a. Issue a declaratory judgment stating that GBRA has violated and is continuing to violate the Clean Water Act with its unlawful fill;

b. Grant appropriate injunctive relief to ensure that GBRA prevents the recurring discharges of fill material and addresses the local environmental effects of its unlawful construction project;

c. Retain jurisdiction over this matter until such time as GBRA has come into compliance with the prohibitions, terms, and conditions of the CWA and the injunctive relief ordered by this Court;

d. Assess civil penalties against GBRA of up to $68,445 per violation, per day for violations as provided by 33 U.S.C. §§ 1319(d) and 1365(a), and the Adjustment of Civil Monetary Penalties for Inflation, 40 C.F.R. Pt. 19;

e. Award the Coalition its costs, including reasonable attorney's fees, as authorized under the CWA, 33 U.S.C. § 1365(d); and

f. Grant such other and further relief as the Court deems just and proper.

Respectfully submitted on January 23, 2025.

By: */s/ Lauren Ice*
Lauren Ice
State Bar No. 24092560
lauren@txenvirolaw.com
**PERALES, ALLMON & ICE, P.C.**
1206 San Antonio St.
Austin, Texas 78701
(512) 469-6000 (t) | (512) 482-9346 (f)

*Counsel for Guadalupe River Coalition*

**EXHIBITS**

Exhibit 1 – Guadalupe River Coalition Notice Letter with Mailing Receipts (September 25, 2024)